TYMKOVICH, Chief Judge, concurring in the denial of rehearing en banc. En banc review is not appropriate when, as here, a panel opinion faithfully applies Supreme Court precedent. An en banc court would necessarily reach the same result, since Supreme .Court precedent precludes any other outcome. I.write only to. suggest this case might benefit from further attention by the Supreme Court, As the panel opinion explains, the three-part framework of Solem v. Bartlett, 465 U.S. 463, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984), governs evaluating whether Congress has disestablished an Indian reservation. But strictly applying ‘Solem’s three-part framework in this context, which strongly suggests de facto disestablishment, evokes “the thud of square pegs being pounded into round holes.” Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 426 F.3d 1162, 1193 (9th Cir. 2005) (Kozinski, J., concurring), rev’d and remanded, 551 U.S. 701, 127 S.Ct., 2738, 168 L.Ed.2d 508 (2007), and vacated, 498 F.3d 1059 (9th Cir. 2007). In 1893, Congress created the Dawes Commission to negotiate with the Creek Nation for the express purpose of extinguishing national title to lands held by the Creek Nation, preferably through allotment. Act of Mar. 3, 1893, § 16, 27 Stat. 212 at 645. The Creek Nation refused to negotiate, so Congress began imposing restrictions. Over the following five years, Congress destroyed the Creek legal system and threatened to terminate Creek land ownership unless the tribe agreed to allotment. Faced with this threat, the Creek Nation agreed to allotment in 1901. Most land owned by the Creek Nation was then allotted to individual members of the tribe. Murphy v. Royal, 866 F.3d 1164, 1201-02 (10th Cir. 2017). The parties hotly dispute the inferencés to be drawn from the history of the Creek Nation. I am not without sympathy for Oklahoma’s argument that Congress’s series of actions' here effectively constitute disestablishment, but the panel properly rejected that argument: Solem is clear that “[o]nce a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise.” 465 U.S. at 470, 104 S.Ct. 1161 (emphasis added); see also Murphy, 866 F.3d at 1219 (explaining that allotment alone cannot terminate a reservation under Supreme Court precedent). Supreme Court precedent thus requires that evidence of intent to disestablish be “unequivocal].” Nebraska v. Parker, — U.S. —, 136 S.Ct. 1072, 1080-81, 194 L.Ed.2d 152 (2016). History, however, is not always well suited to provide the unequivocal evidence of disestablishment that Solem requires. Sometimes history is ambiguous, making it impossible to decide between competing narratives. Historians have been debating the Fall of Rome for millennia. Sometimes there will be unequivocal evidence one way or another. But sometimes not. When confronted with contemporaneous history that is far from unequivocal. Solem gives the edge.to the tribes. Solem itself recognized that “[w]her¿ nomlndian settlers flooded into the opened portion of a reservation and the area has long since lost its Indian character ,.... de facto, if not de jure, diminishment may have, occurred.” 465 U.S. at 471, 104 S.Ct. 1161. But, the Solem Court continued, this recognition only extends so far: “When both an act and its legislative history fail to provide substantial and compelling evidence of a congressional intention to diminish Indian lands, we are bound by our traditional solicitude for the Indian tribes to rule that diminishment did not take place and that the old reservation boundaries survived the opening.” Id. at 472, 104 S.Ct. 1161. And Parker confirmed this approach. See Murphy, 866 F.3d at 1198 (discussing how Parker illustrates the significance Solem places in statutory text, even in the face of strong subsequent demographic evidence). This case may present the high-water mark of de facto disestablishment: the boundaries of the Creek Reservation outlined by the panel opinion encompass a substantial non-Indian population, including much of the city of Tulsa; and Oklahoma claims the decision will have dramatic consequences for taxation, regulation, and law enforcement. The panel faithfully applied Supreme Court precedent holding that such “demographic evidence [cannot] overcome the absence of statutory text disestablishing the Creek Reservation.” Murphy, 866 F.3d at 1232. But this may be the rare case where the Supreme Court wishes to enhance Steps Two and Three of Solem if it can be persuaded that the square peg of Solem is ill suited for the round hole of. Oklahoma statehood. As Justice Cardozo wrote, “[e]xtraordinary sitúations may not wisely or fairly be subjected to tests or regulations that are fitting for the commonplace or normal.” Pokora v. Wabash Ry. Co., 292 U.S. 98, 105-06, 54 S.Ct. 580, 78 L.Ed. 1149 (1934). In sum, this challenging and interesting case makes a good candidate for Supreme Court review.